**UNITED STATES of America, Appellee,**

v.

**Arona Fary DIOP, Appellant.**

**No. 186, Docket 76–1158.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1976.

Decided Dec. 3, 1976.

Jonathan Silberman, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for appellant.

Stanley A. Teitler, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S.

Atty., E. D. N. Y., Brooklyn, N. Y., Alvin A. Schall, Asst. U. S. Atty. Brooklyn, N. Y., of counsel), for appellee.

Before SMITH, OAKES and MESKILL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal deals with the application of 18 U.S.C. § 3501 during the trial of Arona Fary Diop before the United States District Court for the Eastern District of New York, John F. Dooling, Jr., *Judge.* Diop was convicted on trial to the jury on four counts of importing and possessing with intent to distribute 950 grams of opium and 32 kilograms of hashish, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 841(a)(1). We find no error and affirm.

## I.

On November 7, 1975 Diop, a citizen of Senegal, went to John F. Kennedy International Airport ("JFK") to pick up a crate which had arrived on a Pan American World Airways flight from Abidjan, Africa. Diop told Gerard Brady, the general manager and customs house broker for Continental Air Cargo, that the crate contained musical instruments. After paying Brady $125.36 for duty, bond, and service charges and completing the appropriate documents, Diop went to the customs inspection room and handed the documents to United States Customs Inspector Grabbatin. Grabbatin discovered a false bottom in the crate and found in the false bottom substances later identified as opium, hashish, and marijuana. Grabbatin informed Diop he was under arrest and read him his *Miranda* rights in English. Grabbatin then called the Drug Enforcement Administration ("DEA"). While waiting for the DEA agents to arrive, Diop and Grabbatin had a brief conversation. DEA agents Joseph Giaimo and John Huber, along with two other DEA agents, then arrived. Agent Giaimo told Diop he was under arrest and again read him the *Miranda* warnings in English. Giaimo and Huber then had a conversation with Diop.

Prior to trial Diop moved to suppress the post-arrest statements he had made to Grabbatin and all the statements he had made to Giaimo and Huber. Diop claimed that his understanding of English was so bad that he had not understood the *Miranda* warnings and had not realized he was under arrest. Following testimony by Brady, Grabbatin, Giaimo, Huber, Gorgui Diaye (an interpreter), and Diop, Judge Dooling ruled that the government had not borne the burden of establishing that Diop had consciously waived his constitutional rights and so, under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Diop's statements could not be introduced by the government during its case in chief.

At the trial in December, 1975, Diop testified about what happened at JFK. Diop denied he had made inculpatory statements, and during the government's rebuttal Giaimo, Grabbatin, and Huber testified about the statements Diop had made to them. Diop's counsel did not object to Judge Dooling's charge to the jury. The jury convicted Diop on all four counts.

## II.

Diop argues that he raised the issue of whether his post-arrest statements were voluntary and that, Judge Dooling was therefore required, pursuant to 18 U.S.C. § 3501(a), to instruct the jury on voluntariness once his statements were admitted as part of the government's evidence. Diop further claims that the failure of Judge Dooling to give such a jury charge, even though not requested by Diop at the trial, is reversible error under *United States v. Barry,* 518 F.2d 342 (2d Cir. 1975).

A defendant's statements may constitutionally be used during the government's rebuttal case to impeach his testimony even though they cannot be used during the government's case in chief. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). But we are concerned here with the interpretation of a statute, not with the application of the fifth and fourteenth amendments,

Judge Dooling's finding that the government had not shown that Diop's statement was voluntary for purposes of waiving his constitutional rights need not be conclusive for determining whether his statutory rights were violated.

The language of the statute [1] makes no distinction between a defendant's confession [2] in evidence during the government's case in chief and during the government's rebuttal case. So our problem here is to decide whether Diop raised "any issue as to voluntariness." 18 U.S.C. § 3501(a). While § 3501(b) [3] lists five specific factors and instructs the judge to take "into consideration all the circumstances surrounding the giving of the confession," the statute does not specify how the judge is to decide the threshold question of whether there is an issue.

"The notion of 'voluntariness' is itself an amphibian." *Culombe v. Connecticut,* 367 U.S. 568, 604–605, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037 (1961). It need not be the same under the fourth amendment as under the fifth amendment. *Compare Schneckloth, Conservation Center Superintendent v. Bustamonte,* 412 U.S. 218, 248–249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) *with Miranda,* 384 U.S. at 468–469, 86 S.Ct. 1602. Neither *Harris,* 401 U.S. at 224, 91 S.Ct. 643 *nor Hass,* 420 U.S. at 722, 95 S.Ct. 1215, deals with a claim of involuntariness. *United States ex rel. Wright v. LaVallee,* 471 F.2d 123 (2d Cir. 1972), *cert. denied,* 414 U.S. 867, 94 S.Ct. 167, 38 L.Ed.2d 87 (1973), deals with the issue of a confession under the sixth and fourteenth amendments and is not a case where there is a serious question about the voluntariness of the statements (*id.* at 127).

In *Barry,* 518 F.2d at 345, the defendant "claimed that the statements had been extracted by means of verbal threats and physical intimidation." Here Diop claims on appeal "that he did not fully understand the warnings and constitutional rights enumerated on a *Miranda* card shown to him; that he did not remember anyone reading from such a card; and denied that he had been told he had a right to a lawyer. Moreover, at the time of his arrest, appellant realized that something was wrong, but did not comprehend what was happening or understand the agents." Brief for Appellant at 16.

Diop's assertion that he did not understand that he was under arrest at JFK weakens his argument that his statement was involuntary. *Miranda,* 384 U.S. *passim.* Nor does his claim that he did not understand the *Miranda* warnings adequately raise the issue of voluntariness. We think more is needed to invoke § 3501, especially under the circumstances here, where Diop had denied making the state-

---

1. 18 U.S.C. § 3501(a) says:

    . . . If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

2. 18 U.S.C. § 3501(e) says:

    As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing. Diop's alleged post-arrest statements are a "confession."

3. 18 U.S.C. § 3501(b) says:

    (b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

    The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

ments at all. Counsel may well have chosen to avoid the issue of voluntariness before the jury because of its possible dilution of the claim that the admissions had not been made.[4] Counsel made no objection to the lack of a charge on voluntariness; in fact Diop's counsel stated, "I think the charge is eminently fair as given," and "object to any correction." We think the issue not sufficiently raised and the statute not invoked.

Affirmed.

---

**4.** Diop's appellate counsel was not his trial counsel.