**UNITED STATES of America, Appellee,**

v.

**Frank Tillman LEWIS, Appellant.**

**No. 222, Docket 77–1224.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1977.

Decided Nov. 21, 1977.

Richard S. Berne, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Alvin A. Schall and Cheryl M. Schwartz, Asst. U. S. Attys., Brooklyn, N. Y., on the brief), for appellee.

Henry J. Boitel, New York City, for appellant.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

After a jury trial in the United States District Court for the Eastern District of New York before Thomas C. Platt, J., appellant Frank Tillman Lewis was convicted of armed bank robbery and conspiracy to commit that crime, 18 U.S.C. §§ 2113(a) and (d), and 371. For these offenses, Lewis received consecutive sentences of 25 years and five years, respectively. Shortly thereafter, the judge found Lewis in contempt for refusing to answer certain questions at the separate trial of his co-defendant Robinson Quinones,[1] and sentenced Lewis to six

---

1. Quinones, who had been a fugitive until shortly before Lewis was tried, received con-

current sentences of 25 years and five years. His appeal was heard by another panel on

months imprisonment.[2] Lewis appeals from both judgments of conviction.

## I. The Facts

There is no claim that the evidence on the bank robbery conviction was insufficient, and the jury could have found the following: On the morning of January 3, 1977, appellant and an accomplice robbed the Barclay's Bank at 2215 Church Avenue in Brooklyn. The robbers operated in style. They were driven to the vicinity of the bank in a chauffeured white Cadillac limousine, and went in pretending to be customers. In short order, both men drew guns and threatened those inside the bank. Appellant threw a woman customer to the ground and fired two shots from his gun. His accomplice disarmed a bank guard and collected about $11,800 from the cash drawers and the employees. The two men then went around the corner to the waiting limousine.

Twelve days later, the FBI arrested appellant at a New York hotel. After the agents identified themselves, appellant came to the door of his hotel room, shielding himself with a woman. The agents arrested appellant and gave him his *Miranda* warnings. Thereafter, the agents discovered in the room both the gun that was taken from the bank guard and a gun that had fired a bullet in the bank.

At trial, the case against appellant was overwhelming. The guns were, of course, strong evidence of guilt. In addition, a bank customer (Norma Sharpe) had identified appellant from photographs after the robbery, and she so testified. The driver of the limousine service testified that he drove appellant to and from the vicinity of the bank on January 3. Also, the jury was told of appellant's admission, when arrested,

that he was guilty. In short, the jury's verdict was amply justified.

## II. The Bank Robbery Conviction

### The photographic identification

In his thorough brief and argument, appellant's counsel maintains that the district judge committed a number of errors of law. The most substantial arguments on appeal stem from Norma Sharpe's pre-trial identification of appellant from a display of photographs.[3] At trial, Mrs. Sharpe was unable to identify appellant in the courtroom and mistakenly picked out a Deputy United States Marshal instead.[4] When Mrs. Sharpe was then shown the photographic display, she testified that she had previously identified one of the bank robbers from the group of pictures, and she then picked out the photograph she had earlier selected. This picture, which was of appellant, was then admitted into evidence. After Mrs. Sharpe's testimony, FBI Agent Leo Farrell testified as to the way in which he had prepared the photographic spread. He also confirmed that Mrs. Sharpe had selected appellant's picture shortly after the bank robbery.

■ Appellant offers a number of objections to this evidence. Citing *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), he first argues that the display was so impermissibly suggestive as to warrant exclusion. The argument is without merit. Ten photographs were originally shown to Mrs. Sharpe. All were of black males, facing front, wearing eyeglasses. The claim that there was no significant resemblance between them and defendant is simply frivolous. Also, while it is true that a yardstick measuring device appears only in defendant's photograph, the device

October 6, 1977, which affirmed the conviction in open court.

**2.** The Government states that this sentence is consecutive to the earlier sentences.

**3.** It is not clear that the objections raised by appellant at trial to the Sharpe testimony were sufficient to raise all the points urged on this

appeal. Moreover, there is no question that other testimony bearing on the pretrial photographic identification, elicited from FBI Agent Farrell, is being challenged before this court in the absence of timely objections below. But appellant throughout urges plain error.

**4.** We are told by the briefs the identity of the person picked out in court by Mrs. Sharpe.

is inconspicuous and insignificant. In short, the spread was neither suggestive nor unfair. Cf. *United States v. Bubar,* 567 F.2d 192, 198 (2d Cir. June 30, 1977); *United States v. Boston,* 508 F.2d 1171, 1176–78 (2d Cir. 1974), cert. denied, 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975).

Appellant next argues that the identification testimony should have been excluded as hearsay, and is not permitted by the new Federal Rules of Evidence. Appellant directs our attention to Rule 801(d), which contains various definitions, and provides in relevant part that:

> (d) Statements which are not hearsay. A statement is not hearsay if—
>
> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) *one of identification of a person made after perceiving him* ; . . . (Emphasis supplied).

Appellant argues that Agent Farrell's testimony should have been excluded because "identification of a person made after perceiving him" contemplates only corporeal, not photographic, identification; and because it was improper to allow Farrell to testify in the absence of an in-court identification by Mrs. Sharpe. Appellant also claims that Mrs. Sharpe's testimony about her prior identification after she erroneously identified someone else in court amounted to testimony about a prior inconsistent statement not made under oath, rendering it improper under subsection (A), which overrides subsection (C).

Subsection (C) of Rule 801(d)(1), the focal point of appellant's arguments, appeared in its present form in the Rules as promulgated by the Supreme Court in November 1972. However, the Senate deleted the subsection before the Rules were approved by Congress in December 1974. Not long thereafter, the subsection was resurrected in an amendment 'to Rule 801, effective October 31, 1975.[5] The Senate Report on the 1975 amendment attributed the initial opposition to the subsection to concern over convicting a defendant solely on "unsworn, out-of-court testimony."[6] The Report noted, however, that the Rule required the identifier to be available for cross-examination at the trial, and in support of the view that such evidence should be admissible, cited, among other recent decisions, the Supreme Court's discussion in *Gilbert v. California,* 388 U.S. 263, 272 n. 3, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the opinion of Judge Friendly in *United States v. Miller,* 381 F.2d 529, 538 (2d Cir. 1967), cert. denied, 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968), and the en banc decision of the Court of Appeals for the District of Columbia, *Clemons v. United States,* 408 F.2d 1230 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). The controversy over, and the rationale of, subsection (C) are both admirably summarized in 4 Weinstein's Evidence, 801–3ff., ¶ 801(d)(1)(C)[01]. We agree with the observation there made that

> Congress has recognized, as do most trial judges, that identification in the courtroom is a formality that offers little in the way of reliability and much in the way of suggestibility. The experienced trial judge gives much greater credence to the out-of-court identification.

Id. at 801–103. This court recently pointed out that "[t]he purpose of the rule was to permit the introduction of identifications made by a witness when memory was fresher and there had been less opportunity for influence to be exerted upon him." *United States v. Marchand,* 564 F.2d 983, 996 (2d Cir. 1977).

With these considerations in mind, we turn to appellant's specific contentions.

**5.** Pub.L.No.94–113, 89 Stat. 576.

**6.** S.Rep.No.199, 94th Cong., 1st Sess. 2 (1975), hereafter "Senate Report." See also S.Rep.No. 1277, 93rd Cong., 2d Sess. (1974).

The legislative history makes clear that Congress intended "nonsuggestive . . . photographic," as well as lineup, identifications to be covered by subsection (C). Senate Report, at 2.[7] This conclusion is confirmed by our recent holding in *United States v. Marchand,* supra, 564 F.2d at 996. We can see no sound principle for construing "identification of a person" to exclude identification by a photograph. True, there are dangers peculiar to photographic identification and these, like the dangers of a lineup or even those of an on-the-spot identification, must be taken into account in assessing reliability. But they do not justify a limiting construction of subsection (C).

■ Appellant's second argument on this point is that the failure of Mrs. Sharpe to identify appellant in court made inadmissible Agent Farrell's evidence that she had identified appellant a month or two earlier. Appellant may be confusing this situation with that posed by the failure or refusal of the identifying witness to recall in court the earlier identification, which is discussed in Judge Weinstein's treatise from which appellant's brief extensively quotes. In that situation, testimony like Agent Farrell's might well raise questions concerning the adequacy of cross-examination and the right to confront the original identifying witness. In this case, however, Mrs. Sharpe did recall her prior identification and so testified. Even before the new Rule, we approved of admitting evidence of prior identification, albeit corporeal, by the declarant's "own testimony and also by that of others corroborating his version of the details," see *United States v. Miller,* supra, 381 F.2d at 538, cited by the Senate Report in support of subsection (C). Cf. *United States v. Jenkins,* 496 F.2d 57, 68–70 (2d Cir.), cert. denied, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975) (declarant could not recall prior photographic nonidentification of Jenkins and identification of another; evidence of same through third party excluded). If appellant is suggesting that under the new Rule testimony like Agent Farrell's may only be used to bolster an accurate in-court identification, we disagree. It seems clear both from the text and the legislative history of the amended Rule that testimony concerning extra-judicial identifications is admissible regardless of whether there has been an accurate in-court identification. The Senate Report recognizes the possibility that there may be a "discrepancy . . . between the witness's in-court and out-of-court testimony,"[8] and the House Report praises the amended Rule as a means of ensuring that "delays in the criminal justice system do not lead to cases falling through because the witness can no longer recall the identity of the person he saw commit the crime."[9] The occurrence of the very contingency foreseen by the Congress will obviously not serve, of itself, to bar the Farrell testimony.

■ Appellant's final point seems to be that subsection (C) does not apply at all when the identifier has made an erroneous in-court identification because the prior identification is inconsistent with it and was not given under oath, as required by subsection (A). The Government responds that since appellant's appearance had changed significantly by the time of trial, there was no inconsistency. More significantly, even though Rule 801(d)(1) embraces subsection (C), the latter is not limited by the earlier subsections. Subsection (C) represents a legislative decision to admit statements of identification provided the declarant "testifies at . . . trial . . . and is subject to cross-examination concerning the statement." These conditions were met here, and we do not think that subsection (C) is rendered inoperative by Mrs. Sharpe's misidentification in court.

*Denial of continuance and objections to the charge*

■ Appellant's remaining arguments regarding the bank robbery conviction require less comment. In denying a request on the opening day of trial for a continuance, the

---

7.  See also the House Report on subsection (C), H.Rep.No.355, 94th Cong., 1st Sess. 2–3 (1975), hereafter "House Report."

8.  Senate Report, supra note 6, at 2.

9.  House Report, supra note 7, at 3.

judge did not commit reversible error. Appellant was arrested on January 15, 1977 and arraigned originally on February 4. His counsel, employed by the Legal Aid Society, made pretrial motions and stated that he would be ready on March 2. On that day, counsel stated that *appellant* wanted a continuance to discuss further preparation of a defense. Counsel did not state that he was unprepared to go ahead. Even on appeal, we are given no inkling of what defense counsel might have done had he been given more time to prepare before trial. The case involved a simple bank robbery and the evidence against appellant was overwhelming. Under the circumstances, there was no abuse of discretion in denying the continuance.

■ Appellant also argues that the judge erred in failing to instruct the jury in accordance with 18 U.S.C. § 3501(a) on the weight to be given to his post-arrest admission to the FBI agents on January 15, 1977, and on the dangers of misidentification. Neither contention has merit. Defense counsel's obvious strategy at trial was, without putting his client on the stand, to imply that the admission was not made at all, and counsel so argued to the jury. There was little, if any, evidence from which a jury could infer that the statement was involuntary. We have held that in these circumstances section 3501(a), reproduced in the margin,[10] does not require that the jury be specifically charged on voluntariness. *United States v. Fuentes,* 563 F.2d 527, 534–536 (2d Cir. 1977); *United States v. Diop,* 546 F.2d 484 (2d Cir. 1976). Appellant relies on our decisions in *United States v. Lucchetti,* 533 F.2d 28, 38–40 (2d Cir.), cert. denied, 429 U.S. 849, 97 S.Ct. 136, 50 L.Ed.2d 122 (1976), and *United States v. Barry,* 518 F.2d 342 (1975). Although there is language in both opinions helpful to appellant, they do not call for reversal here. In *Lucchetti,* the panel ultimately found

determinative defendant's failure, as in this case, to offer evidence "from which the jury could have inferred that the confessions were anything but voluntary." 533 F.2d at 40. And *Barry* was distinguished in *United States v. Fuentes,* supra, on similar grounds.

■ With regard to the judge's failure to charge on the dangers of photographic misidentification, the judge did charge that the identity of the defendant "as one of the perpetrators of the crime charged" was the key issue in the case on which the Government had the burden of proof beyond a reasonable doubt. Counsel had been invited to submit a specific identification charge but did not do so, and made no objection to the charge as given. While we have suggested that it is better practice to give such a charge, see *United States v. Fernandez,* 456 F.2d 638, 643–44 (2d Cir. 1972), it was not plain error in these circumstances to fail to do so. Cf. *United States v. Marchand,* supra, 564 F.2d at 997; *United States v. Gentile,* 530 F.2d 461, 469 (2d Cir.), cert. denied, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *United States v. Evans,* 484 F.2d 1178, 1187–88 (2d Cir. 1973).

### III. The Contempt Conviction

On May 10, 1977, appellant testified in the separate trial of his co-defendant, Robinson Quinones. Appellant was twice cited for contempt by Judge Platt in the course of that testimony and was sentenced to six months imprisonment on the ground that he had willfully disobeyed a lawful order of the court. Appellant submits that there is insufficient evidence to sustain the contempt finding, urging that it was based solely on his legitimate refusal to incriminate himself.

Appellant's testimony at Quinones' trial included a concession that appellant had

---

10. § 3501. Admissibility of confessions

    (a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any

issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

been convicted of robbing the Barclay Bank on January 3, 1977, coupled with the assertion that, to his knowledge, Quinones had not robbed the bank. When appellant was cross-examined as to his participation in the robbery, he did not invoke the Fifth Amendment. Instead, he stated that the facts surrounding his involvement had been determined adversely to him at his own trial. Judge Platt warned appellant that this evasive maneuver would lead to a finding of contempt if repeated, and made two such findings when appellant persisted in circumventing all questions bearing on his culpability.

■ Appellant's attempt to give comfort to his co-defendant without at the same time prejudicing himself included no statement that could reasonably be construed as an effort to raise his Fifth Amendment rights. Judge Platt's refusal to countenance such manipulative and self-serving tactics was proper, and appellant's contumacy afforded ample ground for imposition of sentence pursuant to 18 U.S.C. § 401. Cf. *United States v. Martin*, 525 F.2d 703 (2d Cir.), cert. denied, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975).

Judgment affirmed.