UNITED STATES of America,
Plaintiff-Appellee,

v.

Esteban Leon GONZALES,
Defendant-Appellant.

No. 83–3132.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1984.

Decided Dec. 21, 1984.

See also, D.C., 576 F.Supp. 334.

Karen Skrivseth, Dept. of Justice, Washington, D.C., for defendant-appellant.

Robert A. Goffredi, Portland, Or., for plaintiff-appellee.

Before SKOPIL, FARRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Eduardo Patino, a/k/a Leo Ribera, was convicted of robbing a Portland bank. Patino's codefendant, appellant Esteban Gonzales, was convicted of receiving stolen money and being an accessory after the fact to Patino's robbery. Appellant claims that the trial court erred in denying his motions for separate trials and in refusing to make a pretrial determination of the voluntariness of his waiver of Miranda rights. Appellant also claims that the trial court erred in limiting the scope of cross-examination and impeachment of a police officer who questioned him and in denying his motions to suppress certain physical evidence and statements. We affirm the trial court.

I

FACTS

At 11:30 a.m. on April 7, 1983, Officer Robin Long heard a police radio broadcast that a suspicious Hispanic man had been seen leaving the area of several Portland banks in a white Datsun station wagon with license number GEB 298. The man, later identified as Patino, was "suspicious" because several bank employees thought he looked like a man who had recently robbed them. Half an hour later, Long heard another broadcast that a different bank had just been robbed by a lone person described as a white male, age 28 to 29, 5' 8" to 5' 9" tall, and wearing a white hat, who had carried the money out of the bank in a magazine. Long testified that to him the term "white" included Hispanics.

A few minutes after hearing the second broadcast, Long saw a white Datsun station wagon approximately 20 blocks from the bank that had just been robbed. Long observed that there were two persons in the Datsun, that both appeared to be His-

panic, and that the driver seemed to make a hasty lane change and turn after spotting the patrol car. The Datsun disappeared before Long could catch up with it, but he soon found it again parked a few blocks away. Long noticed that the parked Datsun had license number GEB 598, which differed from the broadcast license number by only one digit, that the car had only one occupant, that a second man emerged from a nearby lawn to enter the car on the passenger side, and that the driver then handed him a folded magazine. The driver was appellant Gonzales, and the passenger was his codefendant Patino. When Long approached the car on foot, he also noted that there was a blue sweatshirt and a pair of jeans on the back seat and portions of brown paper bags on the floor, all of which were similar to items he knew were used by robbers in previous local bank robberies.

Officer Long conducted a pat-down search of Gonzales that revealed four $20 "bait bills" from the recent robbery rolled up in his left sock. Long next searched the car and found a large stack of money in the glove compartment. Gonzales was then advised of his rights in English, which he indicated that he understood. When other officers arrived at the scene, they searched the nearby bushes and found some clothing, a hat, and a false mustache that were later identified by a bank teller as those worn by the robber.

On arrival at the police station, Gonzales read two forms explaining his Miranda rights in both English and Spanish, and had the Spanish form read to him orally. Appellant indicated orally and by signing both forms that he understood his rights. He was then interviewed by several police officers. Officer Painton conducted most of the questioning half in Spanish, appellant's native language, and half in English. Painton testified that Gonzales understood questions put to him in English and often answered in English, but that he sometimes asked for clarification in Spanish.

Appellant told the police that he gave Patino, an acquaintance, a ride to the vicinity of the robbed bank, where they parted

company. Later, as appellant was leaving the area, Patino flagged him down for another ride. During the second ride, Patino began removing some of his clothing, which Gonzales said was his first indication that Patino had robbed a bank. At that point, according to appellant, Patino gave him the bait bills that the police found in his sock. When a police car appeared behind them, Gonzales said he handed Patino his clothing and other property and ordered him to leave the vehicle. When Patino returned after hiding the clothes in the bushes, the police arrested both men.

On the day before trial, appellant's counsel informed the court that she had changed her trial tactics and therefore needed a pretrial determination of whether Gonzales had knowingly and voluntarily waived his constitutional rights before giving the statements outlined above. The request was denied after the government objected that appellant had waived the issue by failing to raise it at the pretrial suppression hearing. The court did, however, instruct the jury that it must find a knowing, voluntary waiver of appellant's constitutional rights before it could consider the statements, and later stated for the record that it had made a preliminary determination that appellant had understood and waived his rights.·

The judge also denied appellant's requests that the two defendants be tried separately. Similarly, the court denied appellant's motions to exclude all evidence and statements attributable to the stop of his car, which appellant alleged was not supported by probable cause. The court initially denied a motion to exclude all references to robberies other than the one charged.[1]

The trial judge also restricted appellant's attempted impeachment of Officer Pain-

ton's allegedly poor Spanish language skills. Although she allowed cross-examination about Painton's academic background and residence in Spanish-speaking countries, she refused to allow the jury to hear any other evidence. In an offer of proof, Painton was asked to translate the preface to a legal dictionary that was read to him in court, and a Spanish professor then harshly criticized his translation. The evidence was excluded when the prosecutor objected that spoken and written Spanish are very different, and the court added:

> You cross examined him thoroughly about his qualifications, and I'm going to leave that to the jury. But I am going to sustain the objection to suddenly bringing forth a book, I don't know what it is, and having your interpreter interrupt her duties of interpreting to read to him Spanish. So I will sustain the objection.

In addition, the court required Painton to substitute the words "the other man" for Patino's name when describing appellant's responses to interrogation, which was necessary to avoid prejudicial testimony against Patino by a codefendant who was not subject to cross-examination. Appellant's attorney was allowed, however, to bring out on cross-examination that Gonzales had known the "other man."

Patino's attorney implied in his opening statement that Gonzales rather than Patino had robbed the bank. However, prior to the close of the government's case and before appellant's attorney had addressed the jury or presented any witnesses, Patino spontaneously informed the jury that "Mr. Gonzales is innocent.... I put the money in the sock. The whole idea was mine. He didn't know anything about it." Patino then changed his plea to guilty, and later testified that the story Gonzales told the police was essentially correct and that he

---

**1.** Patino's attorney indirectly referred to prior robberies in his opening statement, elicited testimony on cross-examination that two police officers thought the blue sweatshirt in the back of appellant's car was significant because of the use of similar clothing in prior crimes, and also elicited testimony that a bank employee had earlier seen someone who was suspected of hav-

ing previously robbed his bank get into the passenger side of appellant's car. Patino apparently wanted to show that either appellant or a third person had committed the earlier robberies. Painton also stated on direct examination that he asked appellant to copy a demand note from a prior robbery as a handwriting sample.

had committed the robberies without appellant's knowledge.

The jury found appellant innocent of robbery but guilty of receiving stolen money and being an accessory after the fact. He challenges four of the trial court's rulings on appeal, each of which will be addressed in turn.

## II

### SEVERANCE

Appellant contends that the trial court erred by denying his motions to sever his and Patino's trials. The relevant rule provides that

> [i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants ... for trial together, the court *may* order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed.R.Crim.P. 14 (emphasis added). The standard of review for determining whether a severance motion should have been granted under Rule 14 is whether the trial court abused its discretion. *United States v. Cowley*, 720 F.2d 1037, 1040 n. 1 (9th Cir.1983). We have recently elaborated on what constitutes an "abuse of discretion" in this context by saying:

> Generally speaking, defendants jointly charged are to be jointly tried....
>
> The test for determining abuse of discretion in denying severance under Rule 14 is whether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way.... The ruling of the trial judge will rarely be disturbed on appeal....
>
> The party seeking reversal of a decision denying severance under Rule 14 has the burden of proving "clear," "manifest," or "undue" prejudice from the joint trial.... Such a party must show more than that a separate trial would have given him a better chance for acquittal.... He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full

cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant.... In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial.... Clearly, this is not an easy burden to meet.

> The prime consideration in assessing the prejudicial effect of a joint trial is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants
>
> ....

*United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.) (citations omitted), *cert. denied*, 449 U.S. 856, 101 S.Ct. 854, 66 L.Ed.2d 71 (1980). *Accord United States v. Ramirez*, 710 F.2d 535, 545–46 (9th Cir. 1983).

Appellant claims he was prejudiced by three problems that could have been avoided by separate trials: the presentation to the same jury of the codefendants' allegedly inconsistent and antagonistic defenses, the redaction of a witness' testimony to exclude Patino's name, and the introduction of evidence of prior bank robberies as part of Patino's defense. Appellant admits that each of these problems may not require severance individually, but asserts that they create a cumulative level of prejudice that mandates reversal. We hold that two of the alleged errors did not prejudice appellant at all, and the third did not produce sufficient prejudice to require reversal.

#### a. *Antagonistic defenses*

■ We have held on several occasions that

> [a]ntagonism between defenses is not enough [to mandate severance], even if the defendants seek to blame one another.... Rather, it must be shown, on the facts of the individual case, that the defenses "are antagonistic to the point of being mutually exclusive." *United*

*States v. Marable*, 574 F.2d 224, 231 (5th Cir.1978). Only where the acceptance of one party's defense will preclude the acquittal of the other party does the existence of antagonistic defenses mandate severance.

*Ramirez*, 710 F.2d at 546 (citations omitted). *See also United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).

In this case, Patino's opening statement strongly implied that Gonzales committed the robbery alone or in concert with an unnamed third party. However, in the middle of the government's case, and before appellant's counsel had addressed the jury, presented any witnesses or otherwise implied that Patino alone was guilty, Patino spontaneously confessed his own guilt and appellant's innocence and changed his plea to guilty. Thereafter, appellant presented as his own defense, supported by Patino's voluntary testimony, the theory that Patino had committed the robbery without appellant's knowledge. Any antagonism between the two defenses was therefore resolved, eliminating any possibility of "clear, manifest or undue" prejudice. Appellant's acquittal on the robbery charge further supports the conclusion that the jury could "compartmentalize" the evidence against the two defendants. The trial judge did not abuse her discretion in denying severance on this ground.

### b. *Redaction*

■ Patino could not cross-examine Gonzales about his custodial statements that implicated Patino. Therefore, requiring Officer Painton to substitute the words "the other man" for Patino's name when recounting those statements to the jury was the only way to admit the evidence without violating Patino's sixth amendment rights. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This tactic did not prejudice appellant.

■ Appellant asserts, without any supporting authority, that since the failure to name the guilty party may have damaged the credibility of his exculpatory statements, this case presents a "reverse *Bruton* problem." *Bruton*, however,

> is grounded on the Sixth Amendment right to confrontation which is effectively denied to a criminal defendant when out of court statements, made outside a defendant's presence, are introduced at trial and the maker of the statement is not present, does not take the stand, or invokes a privilege so as to deprive the defendant an opportunity to cross-examine.

*Brady*, 579 F.2d at 1129. Both the rules and the rationale of *Bruton* are therefore inapplicable to this case, since there can be no confrontation problem when the challenged statements were made by the complaining defendant himself. To hold otherwise would not only be illogical, it would lead to the exclusion of *all* statements by one defendant inculpating a jointly-tried codefendant, because in order to admit such a statement a trial judge would either have to refuse to redact the statement and violate the inculpated defendant's confrontation rights under *Bruton*, or redact it and violate the "reverse *Bruton*" rights of the defendant who made the statement. In addition, the redacted statements in this case did not directly implicate appellant. *See United States v. Sears*, 663 F.2d 896, 902 (9th Cir.1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) (holding that an appellant was not prejudiced by redacting testimony about his admission that he and his codefendants had robbed a savings and loan to refer to the appellant and "some others").

■ Finally, even if Gonzales had been slightly prejudiced by the redaction, such prejudice was cured when the trial judge permitted appellant's counsel to elicit testimony that appellant knew the unnamed man he had implicated. The trial court did not abuse its discretion by denying severance on this ground.

### c. *Testimony about prior robberies*

■ The contention that severance should have been granted because Patino's

counsel asked questions on cross-examination about past robberies by an unnamed person presents a closer question because the prosecutor, Patino's counsel, appellant's counsel, and the trial judge all agreed that such testimony was or could be prejudicial to appellant. The trial judge wavered on the issue, initially allowing references to prior robberies on cross-examination, but ultimately ruling in the middle of the government's case that similar evidence would henceforward be inadmissible.

The burden of proof is on appellant to show " 'clear,' 'manifest,' or 'undue' prejudice" involving a "violation of one of his substantive rights" of "such magnitude that the defendant was denied a fair trial." *Escalante,* 637 F.2d at 1201. Appellant, who cites no relevant authority, has not met this extremely heavy burden. The few testimonial references to prior robberies were brief and did not refer to appellant by name. Furthermore, in *United States v. Sears, supra,* we held that where, as here, the jury did not know that any of the defendants had been charged with another bank robbery, there could not have been sufficient prejudice from similar testimony to require severance. *Sears,* 663 F.2d at 901. In addition, appellant was acquitted of the most serious count, bank robbery, which provides at least some evidence that the jury was not so prejudiced by the testimony that it could not give appellant a fair trial. While there may have been some prejudice from allowing the testimony about prior crimes, appellant has not proved such clear, manifest, or undue prejudice as to demonstrate an abuse of discretion by the trial judge.

### III

### WAIVER OF MIRANDA RIGHTS

Appellant contends that the trial court should have made a pretrial determination of the voluntariness of his waiver of his constitutional rights before permitting testimony about his statements to the police. The claim of error is based on a statutory requirement for pretrial determinations of the voluntariness of confessions, *see* 18

U.S.C. § 3501, and the theory that the trial court and jury did not have enough evidence concerning appellant's and Painton's language abilities to determine whether appellant fully understood his rights.

■ Both parties seem slightly confused about the distinction between the voluntariness of appellant's statements themselves and the voluntariness of his waiver of his *Miranda* rights. Appellant's counsel did not contend at trial that the statements themselves were involuntary, but only that because of appellant's poor English and Painton's poor Spanish appellant did not knowingly waive his rights. At least one circuit has held that a defendant's claim that he did not understand his *Miranda* rights before making a post-arrest confession is insufficient to invoke the provisions of 18 U.S.C. § 3501. *See United States v. Fuentes,* 563 F.2d 527, 535–36 n. 6 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); *United States v. Diop,* 546 F.2d 484, 486–87 (2d Cir.1976) (foreign defendant claimed he did not understand the rights read to him in English and also denied making the statements attributed to him). In addition, the statute only applies to pretrial determinations of the voluntariness of *confessions,* which are defined as "confession[s] of guilt of any criminal offense or any self-incriminating statement." 18 U.S.C. § 3501(e). Appellant's statements were basically *exculpatory.* The statute is inapplicable.

This court will overturn a finding that a defendant knowingly and intelligently waived his *Miranda* rights only if it is clearly erroneous. *United States v. Glover,* 596 F.2d 857, 865 (9th Cir.), *cert. denied,* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979). In *United States v. Martinez,* 588 F.2d 1227 (9th Cir.1978), the defendant claimed that he did not understand his rights because they were explained to him in Mexican-accented Spanish, while he only understood Cuban-accented Spanish. We held that the defendant understood and knowingly waived his rights because of testimony that he ap-

peared to understand them as they were read, that he signed a written Spanish-language waiver form (although he disputed testimony that he read it before signing), and that he continued to answer questions put to him by the same Mexican-accented officer who read him the rights form. *Id.* at 1234–35.

■ The facts in this case are similar to those in *Martinez*. The record shows that appellant was orally read his rights in both Spanish and English, that he appeared to understand them, that he read and signed cards explaining his rights in both languages, and that he continued to converse with Painton in both languages thereafter. The court and jury also heard ample testimony concerning both Painton's Spanish ability and appellant's English ability, and that evidence would support a determination that the two understood each other. Even if Painton spoke very poor Spanish and appellant spoke very poor English, the written Spanish would have conveyed to appellant a sufficient understanding of his rights. The trial judge and jury were not clearly erroneous in deciding that appellant knowingly and intelligently waived his *Miranda* rights.

■ We also note that appellant's last-minute request for a voluntariness ruling should have been raised at the pretrial suppression hearing. Fed.R.Crim.P. 12 provides that failure to move for suppression of evidence at the time set by the court waives any objections to admission. *See United States v. Maher*, 645 F.2d 780, 783 & n. 1 (9th Cir.1981) (applying Rule 12 to an untimely motion under 18 U.S.C. § 3501). Although the court in its discretion may "for cause shown" grant relief from such waiver, it was not an abuse of discretion to deny the motion when the only "cause shown" was appellant's belated decision to change trial tactics.

## IV

## IMPEACHMENT OF INTERROGATING OFFICER

■ Appellant attempted to impeach Officer Painton's testimony that appellant understood his rights well enough to waive them, as well as his translation of appellant's statements, by showing through expert testimony that Painton did not communicate well in Spanish. Appellant claims that the trial court's restriction on such impeachment violated both his due process right to present an adequate defense and Fed.R.Evid. 702, which allows expert opinion testimony when it will "assist the trier of fact to understand the evidence or to determine a fact in issue."

This court will overturn a trial court's decision to exclude the testimony of a defense expert "only if the District Court abused its wide discretion or committed 'manifest error' in excluding that kind of testimony." *United States v. Marabelles*, 724 F.2d 1374, 1381 (9th Cir.1984). *See also United States v. Mouton*, 617 F.2d 1379, 1384 (9th Cir.), *cert. denied*, 449 U.S. 860, 101 S.Ct. 163, 66 L.Ed.2d 77 (1980) (evidentiary rulings are reviewed under the "abuse of discretion" standard).

Here, although the trial judge was not entirely clear about the basis for her ruling, there were adequate reasons to exclude the testimony. First, Rule 702 requires expert testimony to be of assistance to the trier of fact. Since the issue was whether Painton's conversational ability was sufficient to understand appellant and adequately advise him of his rights, and since appellant's own expert admitted that the translation exercise proposed by appellant's counsel did not test basic informal conversational ability, the trial judge could have reasonably concluded that the testimony would not assist the jury. Second, the judge expressed legitimate concern about disrupting appellant's use of his interpreter. Finally, given the evidence that appellant read and signed a written rights waiver form in Spanish, and the extensive testimony about Painton's and appellant's language abilities, the testimony was cumulative and a waste of time. The judge did not abuse her discretion or violate appellant's due process rights by excluding it.

V

### SUPPRESSION OF EVIDENCE AND STATEMENTS

Appellant contends that Officer Long did not have probable cause to arrest and search him, and that all resulting evidence and statements should therefore have been excluded as "fruit of the poisonous tree." Appellant stresses the innocent or equivocal nature of many of the numerous facts that led the trial court to conclude that Long had probable cause.

▇▇ There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime. *See United States v. Woods,* 720 F.2d 1022, 1028 (9th Cir.1983); *United States v. Bernard,* 623 F.2d 551, 559 (9th Cir.1979). There is some conflict among the Ninth Circuit cases, however, over whether a trial court's determination that a police officer had probable cause to make a warrantless arrest or search is reviewable under the de novo or clearly erroneous standard. *Compare United States v. O'Connor,* 658 F.2d 688, 690–91 & n. 5 (9th Cir.1981) (listing some of the conflicting cases and applying the clearly erroneous standard) *with United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.), (en banc) (suggesting in dictum that probable cause determinations should be reviewed de novo), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) and *United States v. Maybusher,* 735 F.2d 366, 371 n. 1 (9th Cir.1984) (applying de novo review to a trial judge's determination that a police officer had a "founded suspicion" sufficient to justify an investigatory stop). Although it has been argued that *McConney* settles this conflict in favor of de novo review, we need not decide the question since Officer Long had probable cause to arrest and search appellant regardless of which standard we employ.

▇▇ Long spotted appellant and Patino just minutes after a nearby bank robbery while they were driving away from the scene of the crime in a car with a description and license number almost identical to one reported to contain a suspected bank robber earlier in the day. One or both of the defendants generally matched the descriptions of the actual robber, the suspected bank robber seen at nearby banks, and a profile of a robber who committed a series of nine previous local bank robberies. The driver of the car took what appeared to be evasive action when he spotted Officer Long's vehicle. When the car was again located, one of the occupants was emerging from some bushes. The car itself contained several items in plain view that were similar to items used in recent local bank robberies. Under the totality of the circumstances known to Officer Long, any prudent person would have concluded that there was a fair probability that Patino and Gonzales had committed a crime.

Appellant relies on *United States v. Tate,* 694 F.2d 1217 (9th Cir.1982), *vacated and remanded,* —— U.S. ——, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984) (remanded for further consideration in light of *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Since that decision was vacated by the Supreme Court, it has no precedential effect. *County of Los Angeles v. Davis,* 440 U.S. 625, 634 n. 6, 99 S.Ct. 1379, 1384 n. 6, 59 L.Ed.2d 642 (1979). Moreover, *Tate* is distinguishable because here there were numerous specific and articulable facts linking both Gonzales and his vehicle with the suspected criminal activity. *Cf. Tate,* 694 F.2d at 1222–23 (citing the lack of specific and articulable facts linking the vehicle or its occupants to the suspected crime as grounds for holding that an automobile stop was unjustified).

The trial court was correct in holding that the arrest was supported by probable cause and admitting evidence and statements resulting from that arrest.

VI

CONCLUSION

Appellant's convictions are affirmed.