694 F.2d 1217
 UNITED STATES of America, Plaintiff/Appellee,
v.
Charles TATE, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Ezeal REAVES, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Roosevelt MONTGOMERY, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Johnny V. WILLIAMS, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Norman SWEENEY, Defendant/Appellant.
 Nos. 81-1206 to 81-1208, 81-1223 and 81-1233.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 12, 1982.
Decided Dec. 21, 1982.
 
 Dave Whitney, Forest Fall, Cal., for Tate.
 Victor Sherman, Nasatir, Sherman & Hirsch, Los Angeles, Cal., for Reaves.
 Luke McKissack, Nasatir, Sherman & Hirsch, Los Angeles, Cal., for Montgomery.
 Victor Sherman, Los Angeles, Cal., for Williams.
 Anthony P. Capozzi, Robert A. Giovacchini, Fresno, Cal., for Sweeney.
 Brian Leighton, Asst. U.S. Atty., Fresno, Cal., for the U.S.
 Appeal from the United States District Court for the Eastern District of California.
 Before SKOPIL and POOLE, Circuit Judges, and ENRIGHT,* District Judge.
 POOLE, Circuit Judge.
 
 
 1
 Appellants appeal from their convictions for possession with intent to distribute phencyclidine (PCP), 21 U.S.C. Sec. 841(a)(1), and attempt to manufacture PCP, 21 U.S.C. Sec. 846. The charges resulted from an investigation on July 12 and 13, 1980, by officers of the Tulare County Sheriff's Department.
 
 
 2
 On July 12, 1980, Officer Larry McLaughlin received an anonymous telephone call. As a result of this call, a search warrant for the premises at 5580 Avenue 320 was applied for.[1] McLaughlin's supporting affidavit averred that the anonymous telephone caller stated (1) he had observed three or four black males "utilizing" a white Dodge van at a residence at 5580 Avenue 320, (2) that he could smell "a very strong odor such as ether coming from said residence and/or premises," (3) that the informant was familiar with the odor of ether having used it "continuously on numerous occasions for the purpose of starting engines"; the caller gave directions to the Avenue 320 residence. The affidavit also stated that McLaughlin and another officer went "to the immediate area of said residence and smelled a very strong odor of ether coming from said residence," and that the process of manufacturing PCP "emits a strong odor of ether."
 
 
 3
 While waiting for the magistrate to act upon the application for search warrant, Agent Miller of the California Bureau of Narcotics Enforcement, set up a surveillance of the Avenue 320 residence. At 3:30 a.m. on July 13, 1980, he walked by the residence and smelled cyclohexanone, a necessary precursor for the manufacture of PCP. At 5:08 a.m., a station wagon approached a shed on the premises. Agent Miller noted three to five black males walking about the station wagon and the shed. Some were carrying packages and objects and some were wearing rubber gloves. At 5:45 a.m. they closed and locked the door of the shed, entered the station wagon and departed the area. Agent Miller followed the station wagon. He learned that the applied-for search warrant had been signed, continued to follow the station wagon, and ultimately stopped it about five miles from the Avenue 320 residence. The passengers were ordered out of the vehicle, at which time Miller noted a strong odor of ether and observed a whitish powder on each of the defendants. Defendants were then arrested. A search of their persons disclosed two keys to rooms at the Holiday Inn in Visalia.
 
 
 4
 The premises at Avenue 320 were searched and investigators found PCP and evidence that the substance was being manufactured there.
 
 
 5
 Investigators went to the Visalia Holiday Inn and searched the parking lot for the white van described by the unknown informant. They discovered a white Ford van in which they observed a triple beam scale, a number of containers similar to containers found at the residence, and a package apparently containing rubber gloves. A search warrant for the van was obtained. The search of the van disclosed clothing owned by some of the defendants, chemical precursors to PCP, and a quantity of finished PCP.
 
 
 6
 Appellants' motions to suppress the evidence found at each search was denied, and they were convicted on stipulated facts. This appeal followed.
 
 I. The search of the Avenue 320 residence
 
 7
 The fourth amendment proscribes unreasonable searches and seizures, and items seized in searches illegal under the fourth amendment may not be used as evidence against the victims of the search. See Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). It is a cardinal principle that warrantless searches "are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. at 390, 98 S.Ct. at 2412. To comply with constitutional standards, a search warrant must be supported by an affidavit establishing probable cause to search. See United States v. Traylor, 656 F.2d 1326, 1329-30 (9th Cir.1981); United States v. Armstrong, 654 F.2d 1328, 1335 (9th Cir.1981), cert. denied, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 and 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 470 (1982).
 
 
 8
 The substance of McLaughlin's affidavit in support of the search warrant for the Avenue 320 residence is set forth in the margin.[2] Appellants argue that the evidence seized at the residence must be suppressed because the search warrant was not supported by probable cause. They first argue that the warrant is insufficient because it fails to state the underlying circumstances demonstrating the anonymous informant's reliability. Appellants also contend that the odor of an non-contraband substance in the vicinity of a residence, absent other corroborating evidence of criminal activity, does not establish probable cause to search. Finally, appellants argue that the affidavit contained material misstatements and that under California law further proceedings are required.
 
 A. Reliability of the informant's evidence
 
 9
 An affidavit based at least in part on the tip of an unnamed informer must satisfy two requirements. First, it must disclose some underlying circumstances on which the informant relied. Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964); see United States v. Davis, 663 F.2d 824, 828 (9th Cir.1981); United States v. Lefkowitz, 618 F.2d 1313 (9th Cir.), cert. denied, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); United States v. Garrett, 565 F.2d 1065, 1070 (9th Cir.1977), cert. denied, 435 U.S. 974, 98 S.Ct. 1620, 56 L.Ed.2d 67 (1978). Second, the affidavit must present facts enabling the magistrate to conclude that the informant is credible and his information reliable. Aguilar v. Texas, 378 U.S. at 114, 84 S.Ct. at 1513; United States v. Traylor, 656 F.2d at 1330. See United States v. Davis, 663 F.2d at 828.
 
 
 10
 We find both requirements to be satisfied here. The informer's statement, as reported in the affidavit, that he smelled an odor "such as ether," and that he was familiar with the smell of ether, demonstrates that the caller was relating his own observations, thus satisfying the first prong of the test. See United States v. Garrett, 565 F.2d at 1070. Because the informant was unknown to the investigators, no direct evidence of his credibility and reliability was possible. However, under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), independent corroboration of the tip may satisfy this requirement. The unknown informer's statement that a strong odor of ether emanated from the premises was corroborated by McLaughlin's averment that he and another officer also smelled a strong odor of ether coming from the Avenue 320 residence. See United States v. Garrett, 565 F.2d at 1070.
 
 B. Existence of probable cause
 
 11
 The more difficult question is whether the facts presented in the affidavit are sufficient to establish probable cause. In order to find that an affidavit is sufficient to support a search warrant, a magistrate must only conclude that criminal activity is probably shown. United States v. Traylor, 656 F.2d at 1330; United States v. Armstrong, 654 F.2d at 1335. In reviewing the validity of a search warrant, a court is limited to the information and circumstances available to the magistrate at the time the warrant is issued. J.R. Simplot Co. v. Occupational Safety & Health Administration, 640 F.2d 1134, 1138 (9th Cir.1981), cert. denied, 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 649 (1982); United States v. Brown, 455 F.2d 1201, 1204 (9th Cir.), cert. denied, 406 U.S. 960, 92 S.Ct. 2069, 32 L.Ed.2d 347 (1972). The magistrate's decision is to be accorded great deference. United States v. Traylor, 656 F.2d at 1330; United States v. Armstrong, 654 F.2d at 1335.
 
 
 12
 The unknown informant did not state that the illegal manufacture of PCP, or any other illicit activity, was taking place at the Avenue 320 residence. The sole facts presented in the affidavit suggesting criminal activity at the residence were (1) the premises emitted a strong odor of ether, and (2) the process of manufacturing PCP emits a strong odor of ether.[3] Appellants contend that the smell of a noncontraband substance having a number of legitimate uses, standing alone does not establish probable cause to search a residence. We agree. Ether has many innocuous uses. It is a very common solvent, and is also used to start engines. While the strong smell of ether may be a factor in establishing probable cause, the government cites no case, and we have found none, holding that the smell of ether, without more, establishes probable cause to search.
 
 
 13
 Nor does Johnson v. United States, relied upon by both the government and appellants, authorize a contrary holding. 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In Johnson, the Supreme Court held that the odor of opium was sufficient to establish probable cause to search.
 
 
 14
 If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant.
 
 
 15
 Id. at 13, 68 S.Ct. at 368 (emphasis added). Because ether has several legitimate uses, its odor is not sufficiently distinctive to identify the manufacturing of PCP. See United States v. Noreikis, 481 F.2d 1177, 1178 (7th Cir.1973), vacated in part on other grounds, 415 U.S. 904, 94 S.Ct. 1398, 39 L.Ed.2d 461 (1974).
 
 
 16
 Although mindful of the great deference to be accorded a magistrate's determination of probable cause, we are nonetheless constrained to hold that the affidavit in support of the search warrant for the Avenue 320 premises does not allege facts sufficient to establish probable cause.
 
 C. Appellants' other contentions
 
 17
 In addition to appellants' contentions addressed above, they argue that the affidavit did not establish probable cause to search the outbuildings on the premises, and that the affidavit contained material misstatements. Because we hold that the warrant was not supported by probable cause, these contentions need not be addressed. Nor do we find it necessary to reach the issue whether any remedy resulting from a finding of a negligent or intentional misstatement in the affidavit would be governed by federal or state law. See United States v. Chamberlin, 644 F.2d 1262, 1265 n. 1 (9th Cir.1980), cert. denied, 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981); United States v. Gallop, 606 F.2d 836, 840 (9th Cir.1979); United States v. Grajeda, 587 F.2d 1017, 1018-19 (9th Cir.1978); United States v. Valenzuela, 546 F.2d 273, 275 (9th Cir.1976).
 
 II. The automobile stop
 
 18
 Our inquiry is not terminated by our holding that the search warrant for the Avenue 320 premises was invalid because not supported by probable cause. The government argues that regardless of the validity of the Avenue 320 residence search warrant, the stopping of appellants' automobile was supported by reasonable suspicion and the search warrant for the white van was supported by probable cause; thus the district court's failure to suppress evidence seized in the search of the residence was harmless error.
 
 
 19
 An officer may stop an automobile without a warrant if he has a reasonable or founded suspicion that the vehicle or its occupants are "subject to seizure for violation of law." Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). See United States v. Emens, 649 F.2d 653, 656 (9th Cir.1980); United States v. Post, 607 F.2d 847, 850 (9th Cir.1979). "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-1880, 20 L.Ed.2d 889 (1968); United States v. Emens, 649 F.2d at 656.
 
 
 20
 The evidence must be viewed in the light most favorable to the government, and this court's review is limited to determining whether the district court's findings are clearly erroneous. United States v. Post, 607 F.2d at 849. We find clear error in the district court's determination that reasonable suspicion supported the automobile stop.
 
 
 21
 At the time defendants' station wagon was pulled over, the government was in possession of the following facts. McLaughlin had received an anonymous telephone call stating that the odor of ether was emanating from the residence on Avenue 320, and that between three and five black men were using a white van on the premises. McLaughlin confirmed that the odor of ether was present near the residence when he drove past the house at 10:00 p.m. on July 12, the evening before the defendants' arrest. Miller noted the odor of cyclohexanone at 3:30 a.m. on July 13. Both ether and cyclohexanone are necessary precursors to the manufacture of PCP. These facts appear sufficient to direct some attention to the Avenue 320 residence, but there is no indication that defendants or the station wagon were at the premises when these events took place at 10:00 p.m. or at 3:30 a.m. or at any time between these hours. Neither McLaughlin during his drive-by, nor Miller who had the residence under surveillance during the early morning hours of July 13, noted their presence or departure.
 
 
 22
 The unknown informer described a white Dodge van being utilized on the premises. However, defendants apparently arrived at the Avenue 320 residence shortly after 5:00 a.m. in a station wagon. Several black men, some wearing gloves, were seen carrying containers about near the shed and the station wagon. Miller could not state that containers were either taken from or brought to the station wagon. He also testified that he had on earlier occasions noted farmers in the area wearing gloves and carrying containers in the predawn hours. There is no evidence of record that indicates that gloves are relevant in any way to the manufacturing process of PCP.
 
 
 23
 Three quarters of an hour after they had been first seen, the defendants entered the station wagon and drove from the premises. Investigating officers followed the vehicle for some five miles from the Avenue 320 residence, apparently noticing no suspicious conduct on the part of either car or driver. They then stopped the automobile.
 
 
 24
 We hold that the vehicle stop constituted an unreasonable seizure. The investigators lacked reasonable suspicion that the vehicle or its occupants were subject to seizure for violation of law. Thus the arrest of the defendants and the subsequent search violated the defendants' fourth amendment rights.
 
 
 25
 The identification of ether and cyclohexanone odors at the residence occurred some time before either the defendants or the station wagon arrived on the scene. There are no "specific and articulable facts" linking either the defendants or the vehicle to the manufacture of PCP up to the time the station wagon was stopped; defendants' behavior was entirely consistent with an innocent course of conduct and did not suggest criminal activity. A mere hunch on the part of investigators is not sufficient to justify an automobile stop, even if that hunch turns out to have been a good one.
 
 
 26
 Miller testified that he stopped the vehicle in order to serve the defendants with the search warrant for the Avenue 320 residence. We have held that warrant to be invalid. Were the warrant valid, however, it could not legitimize an otherwise unreasonable automobile stop. The warrant did not describe the station wagon or any other vehicle as an area to be searched. The execution of a search warrant does not require that it be served on the owner or occupant of the premises to be searched. This was not a warrant of arrest and a search warrant does not authorize the arrest of any persons associated with the premises to be searched, when neither on nor near the premises, for the purpose of conveying them to the scene of the search. Cf. Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (police may detain person in the act of leaving premises where police have a proper warrant to search premises for contraband).
 
 III. The search of the white Ford van
 
 27
 Because the exclusionary rule bars the use of evidence seized in an illegal search, the district court erred in refusing to suppress the evidence seized in the search of the residence and the search of the station wagon and defendants' persons incident to their arrest. The further inquiry remains whether the evidence seized from the van in the hotel parking lot must be excluded.
 
 
 28
 After Miller stopped defendants' station wagon, he detected a strong odor of ether emanating from the car's interior and noted that the defendants were each sprinkled with a white powder he suspected to be PCP. He immediately arrested them, and searched the defendants and the station wagon. The search revealed two keys belonging to the Visalia Holiday Inn. The officers then looked through the parking lot of the Holiday Inn and located a 1977 white Ford van. They detected a strong odor of ether coming from the van and also noted "in plain view" (apparently through the van windows) a triple beam scale and box, three five gallon black cans, one five gallon water bottle, a number of five gallon buckets and a bag appearing to contain rubber gloves. The police obtained a warrant and subsequently searched the van.[4] The search disclosed two pounds of PCP and chemicals used in its manufacture.
 
 
 29
 Under the "fruit of the poisonous tree" doctrine, evidence obtained not in an illegal search but as a result of that search is inadmissible against the victim of the search, unless "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' " United States v. Ceccolini, 435 U.S. 268, 273-74, 98 S.Ct. 1054, 1058-59, 55 L.Ed.2d 268 (1978); Wong Sun v. United States, 371 U.S. at 487, 83 S.Ct. at 417. We decline to reach the difficult question whether the discovery of the van was inadmissible under this doctrine, because absent the inadmissible evidence obtained from the illegal search of the Avenue 320 residence and the automobile stop, there is no probable cause to support the search of the van.
 
 
 30
 The only evidence that the magistrate could properly consider in determining this issue of probable cause linked the van neither to the defendants nor to criminal activity at Avenue 320 or elsewhere. The anonymous informer stated that a white Dodge van was being used at the Avenue 320 residence. The van actually searched, however, was a Ford. The informant's information, coupled with the investigators' observations were insufficient to give rise to probable cause to search the residence and bore no relationship at all to a Ford van located in a hotel parking lot. When investigators located the van they noted the odor of ether emanating from the vehicle and observed a scale, a bag of rubber gloves and a number of containers. These circumstances simply do not approach probable cause to search.
 
 
 31
 The judgments of conviction are reversed.
 
 ENRIGHT, District Judge, dissenting:
 
 32
 I respectfully dissent. Based on the totality of the circumstances, I would find probable cause to support the warrant issued for the search of the Avenue 320 residence. Even if there were insufficient probable cause to support issuance of that warrant, the automobile stop and the search of the Ford van were proper. The district court's failure to suppress evidence seized in the search of the residence was harmless error. Accordingly, the convictions should be affirmed.
 
 
 33
 In determining whether there is probable cause to support a search warrant, "[i]t is only necessary that the affidavit enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit." United States v. Flores, 679 F.2d 173, 175 (9th Cir.1982) (quoting, United States v. Hendershot, 614 F.2d 648, 654 (9th Cir.1980)). The magistrate's decision is accorded great deference. United States v. Traylor, 656 F.2d 1326, 1330 (9th Cir.1981).
 
 
 34
 Neither side has cited, nor has this court found, a case which holds that the smell of a non-contraband substance, having legitimate uses, is not sufficient to establish probable cause. Moreover, the smell of ether does not "stand alone" as a basis for establishing probable cause in this case. Other relevant factors include: 1) the anonymous call identifying the location, giving directions, describing persons observed on the premises, noting the strong odor of ether, and indicating personal familiarity with the smell of ether; 2) the investigating officer's corroboration of the location and strong smell of ether; 3) the officer's past experience investigating illicit manufacture of PCP and knowledge that the smell of ether is associated with PCP manufacture; and 4) the time of the officer's observations. Based on the totality of these circumstances, the magistrate could conclude that it was reasonable to seek the evidence at the Avenue 320 residence. Such a conclusion would be less reasonable if the odor of ether had been detected near a hospital, rather than near a farm shed on a country road.
 
 
 35
 The reviewing court must also consider the fact that the officers obtained a warrant. Doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. United States v. Ventresca, 380 U.S. 102, 106, 109, 85 S.Ct. 741, 744, 746, 13 L.Ed.2d 684 (1965); United States v. Flores, supra, 679 F.2d, at 176. "A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." Ventresca, supra, 380 U.S. at 108, 85 S.Ct. at 745.
 
 
 36
 I would affirm even if the search warrant for the Avenue 320 residence were insufficient. The subsequent stop of the station wagon and the search of the Ford van were proper.
 
 
 37
 The investigative stop of a vehicle requires less than probable cause. "Based on [the] whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 694-695, 66 L.Ed.2d 621 (1981); Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). Officer Miller had been conducting surveillance at the Avenue 320 residence prior to his stopping the vehicle. In addition to the information presented to the magistrate in Officer McLaughlin's affidavit in support of the search warrant, Officer Miller had himself detected the odor of cyclohexanone at the residence, and had observed the activity at the shed after the arrival of the station wagon. These facts were sufficient to establish founded suspicion to justify stopping the defendants' vehicle. Once the car was stopped, it was proper for the officer to ask the occupants to get out of the car. Pennsylvania v. Mimms, 434 U.S. 106, 109-110, 98 S.Ct. 330, 332-333, 54 L.Ed.2d 331 (1977). The odor of ether, the weapons in plain view, and the appearance of the occupants provided probable cause for their arrest. The items seized led the officers to the Visalia Holiday Inn and the white Ford van. Items in plain view in the van, and the smell of ether coming from the van, provided probable cause to support the warrant for a search of the van. None of the evidence seized in the station wagon or in the Ford van was "tainted" by insufficiencies in the warrant for the search of the Avenue 320 residence. Given the weight of the evidence, any error in not suppressing the evidence from the search of the residence was harmless. Lockett v. United States, 390 F.2d 168, 174 (9th Cir.), cert. denied, 393 U.S. 877, 89 S.Ct. 175, 21 L.Ed.2d 149 (1968).
 
 
 38
 Furthermore, the evidence obtained from the stop of the station wagon would have remedied any insufficiency in the original warrant for the search of the residence. The officers' error, if any, was in not securing a second search warrant on the basis of newly obtained evidence. Assuming that the first warrant was valid, the officers executed the search of the residence. The purposes behind the exclusionary rule would not be served in suppressing the evidence seized in the Avenue 320 search.
 
 
 
 *
 The Honorable William B. Enright, United States District Judge for the Southern District of California sitting by designation
 
 
 [1]
 The actual address searched was 5530 Avenue 320
 
 
 [2]
 Your Affiant was advised by an anonymous informant within the past one day that said informant observed three to four black male individuals at the residence located at 5580 Avenue 320, Visalia, County of Tulare, who were utilizing a white Dodge van in and upon said premises.... Said informant further advised he could smell a very strong odor such as ether coming from said residence and/or premises. Said informant further stated that he was familiar with the smell of ether from the informant using it continuously on numerous occasions for the purpose of starting engines. Said informant further supplied your Affiant directions to locating said residence
 Your Affiant further has personally observed the aforementioned residence and found that the residence is located and appears as described by the informant .... Your Affiant further states that within the past day your Affiant together with Det. Richard Holguin, went to the immediate area of said residence and smelled a very strong odor of ether coming from said residence. Your Affiant further states that it has been your Affiant's experience in the investigation of illicit manufacture of phencyclidine (P.C.P.) that the process emits a very strong odor of ether.
 That based upon the above facts and information, your Affiant has reasonable and probable cause to believe, that an unidentified individual(s) is now illegally manufacturing a controlled substance, to-wit: Phencyclidine (P.C.P.) at the residence and premises....
 
 
 [3]
 That the caller was able to direct investigators to the residence, and that three or four black males were "utilizing" a van on the premises, do not suggest criminal activity
 
 
 [4]
 The affidavit incorporated the affidavit in support of the residence search, and added the following:
 [O]n or about the 13th day of July, your Affiant executed a search warrant supported by the attached affidavit at the residence located at 5580 Avenue 320, Visalia, County of Tulare, where approximately thirty-five pounds of suspected phencyclidine (P.C.P.) was confiscated and six male individuals were arrested for violation of 11379.5 of the Health and Safety Code. Your Affiant further states that upon arrest of said individuals two hotel keys were confiscated belonging to the Holiday Inn address of 9000 West Airport Drive in Visalia indicating that the suspects arrested were staying at the Holiday Inn in Visalia. As per information received from the informant stating that the suspects were utilizing a white van the officers involved in this case searched the parking lot area of the Holiday Inn for the possible white van. Officers located a possible white van ... and upon approaching said van your Affiant detected a strong odor of ether coming from within said van. Your Affiant further states that he observed in plain sight the following items:
 
 
 [1]
 (1) triple beam scale and box
 
 
 [2]
 (3) 5 gallon black cans same as those located at the residence 5580 Avenue 320, Visalia
 
 
 [3]
 (1) 5 gallon water bottle
 
 
 [4]
 Numerous 5 gallon buckets same as those located residence
 
 
 [5]
 Bag indicating contents of rubber gloves
 Your Affiant prays that a search warrant be issued enabling your Affiant and other peace officers to search the contents of said vehicle ... and confiscate the above listed items number 1 through 5 and other items and paraphernalia as listed in the attached affidavit, and the above mentioned Ford van as an instrumentality of the crime.