UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles TATE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ezeal REAVES, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Roosevelt MONTGOMERY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Johnny V. WILLIAMS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Norman SWEENEY,
Defendant-Appellant.

Nos. 81–1206, 81–1207, 86–1208, 81–1223 and 86–1233.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1981.

Decided Aug. 4, 1986.

Brian Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Dave Whitney, Forest Falls, Cal., Victor Sherman, Luke McKissack, Nasatir, Sherman & Hirsch, Victor Sherman, Los Angeles, Cal., Anthony Capozzi, Robert A. Giovacchini, Fresno, Cal., for defendants-appellants.

Before SKOPIL and POOLE, Circuit Judges, and ENRIGHT,* District Judge.

ENRIGHT, District Judge:

The opinion in this case was originally filed on December 21, 1981. *United States v. Tate*, 694 F.2d 1217 (9th Cir.1982), *vacated* 468 U.S. ——, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984). In a split decision,[1] this court reversed the defendants' convictions, holding that evidence introduced at trial had been seized under warrants issued on an insufficient showing of probable cause, in violation of the fourth amendment. In addition, a subsequent vehicle stop and warrantless arrest, and a later search under a separate warrant, were held invalid under the fourth amendment. The United States petitioned for a writ of certiorari before the United States Supreme Court.

On July 5, 1984, while the government's petition in this case was still pending, the Supreme Court decided *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Court held that evidence seized under an invalid warrant could be admitted if the officers executing the warrant acted in objectively reasonable reliance on it. *Leon*, therefore, established the good faith exception to the fourth amendment exclusionary rule.

The Court also on July 5, 1984, vacated this court's judgment in *Tate*, 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984), and remanded the cause for further consideration in light of *Leon*.

Upon careful consideration, we now hold that *Leon* does apply to this case, and that the officers executing the search warrants were acting in objectively reasonable reliance on them. Thus, in these limited circumstances, the fourth amendment exclusionary rule does not require suppression of the evidence seized, and the defendants' convictions must be affirmed.

## I.

The facts in this case were recited in detail in this court's earlier opinion. *Tate*, 694 F.2d at 1219. They can be summarized as follows: On July 12, 1980, Officer Larry McLaughlin received an anonymous call. The caller stated that (1) three or four men were "utilizing" a white Dodge van at a residence at 5580 Avenue 320,[2] (2) there was a strong odor of ether coming from the residence, and (3) the caller was familiar with the odor of ether. Officer McLaughlin and another officer went to the residence and corroborated the strong odor of ether. The officers knew that ether was frequently used to manufacture phencyclidine (PCP). The caller's informa-

---

* Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

1. The majority opinion was written by Judge Poole and joined by Judge Skopil. Judge Enright, sitting by designation, filed a separate dissenting opinion.

2. The actual address was 5530 Avenue 320.

tion and the officers' corroboration were placed in an affidavit[3] and presented to a magistrate in an application for a search warrant.

At 3:30 a.m. on July 13, 1980, Agent Miller of the California Bureau of Narcotics Enforcement went to the residence. He smelled cyclohexanone, a necessary precursor for PCP. Agent Miller continued his surveillance of the residence, and at 5:08 a.m., he observed a station wagon approach an adjacent shed. Four or five men began to move parcels from the shed to the station wagon; the men were all wearing rubber gloves. At 5:45 a.m., the men left the residence in the station wagon, and Agent Miller followed them.

En route, Agent Miller learned that the search warrant for the residence had been signed by the magistrate. Based on this information and his own surveillance, Agent Miller stopped the station wagon. He detected a strong odor of ether and noticed white powder on the defendants. Agent Miller arrested the five defendants and searched them. Keys to two rooms at a local Holiday Inn were found during the search.

Meanwhile, investigators searched the residence. They found PCP and equipment for its manufacture. The investigators also went to the Holiday Inn, where they observed a white Ford van in the parking lot. A triple beam scale, containers and a package apparently containing rubber gloves were visible inside the van. Consequently, the investigators obtained a search warrant for the van. The search of the van yielded two pounds of PCP and some chemical precursors for its manufacture.

The defendants filed motions in the district court to suppress the evidence seized in each of the searches. The district court denied their motions and the defendants were convicted on stipulated facts for possession with intent to distribute PCP, in violation of 21 U.S.C. § 841(a)(1), and for attempt to manufacture PCP, in violation of 21 U.S.C. § 846.

■ This court's earlier opinion, reversing the convictions, held that the affidavit supporting the search warrant for the residence was insufficient to establish probable cause. Specifically, the majority concluded that "the smell of a noncontraband substance having a number of legitimate uses, standing alone does not establish probable cause to search a residence." *Tate*, 694 F.2d at 1221. The majority further held that Agent Miller's stop of the station wagon was not based on reasonable suspicion of criminal activity and, finally, that the search warrant for the white van was invalid "because absent the inadmissible evidence from the illegal search of the Avenue 320 residence and the automobile stop, there is no probable cause to support the search of the van." *Tate*, 694 F.2d at 1224.

## II.

In *Leon*, the Supreme Court concluded that

3. Your Affiant was advised by an anonymous informant within the past one day that said informant observed three to four black male individuals at the residence located at 5580 Avenue 320, Visalia, County of Tulare, who were utilizing a white Dodge van in and upon said premises ... Said informant further advised he could smell a very strong odor such as ether coming from said residence and/or premises. Said informant further stated that he was familiar with the smell of ether from the informant using it continuously on numerous occasions for the purpose of starting engines. Said informant further supplied your Affiant directions to locating said residence.

Your Affiant further has personally observed the aforementioned residence and found that

the residence is located and appears as described by the informant.... Your Affiant further states that within the past day your Affiant together with Det. Richard Holguin, went to the immediate area of said residence and smelled a very strong odor of ether coming from said residence. Your Affiant further states that it has been your Affiant's experience in the investigation of illicit manufacture of Phencyclidine (P.C.P.) that the process emits a very strong odor of ether.

That based upon the above facts and information, your Affiant has reasonable and probable cause to believe, that an unidentified individual(s) is now illegally manufacturing a controlled substance, to-wit: Phencyclidine (P.C.P.) at the residence and premises....

the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

104 S.Ct. at 3421. Thus, all evidence obtained through an officer's reasonable reliance on a search warrant issued by a neutral magistrate is normally admissible. *Cf. United States v. Merchant,* 760 F.2d 963, 968 (9th Cir.1985) (invalidating a probation search that was staged as a subterfuge for conducting a criminal investigation). In applying *Leon,* the determinative is "the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." [4] *Leon,* 104 S.Ct. at 3421 n. 23.

The Court in *Leon,* however, recognized that suppression would remain an appropriate remedy in four situations: (1) if the affiant misled the magistrate or judge with information that the affiant knew or should have known was false, 104 S.Ct. at 3421; (2) if the magistrate wholly abandoned his judicial function, *Id.;* (3) if the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." 104 S.Ct. at 3422, *quoting Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975); and (4) if the warrant itself is facially deficient in particularizing the place to be searched and the things to be seized. 104 S.Ct. at 3422. *Leon* counsels that, under these circumstances, "the officer will have no reasonable grounds for believing that the warrant was properly issued." 104 S.Ct. at 3421.

**4.** The Court in *Leon* noted that the good faith exception would not affect the standards to which the courts must hold magistrates issuing warrants. The Court stated:

> If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. [Footnote omitted]. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving

## III.

### A. *The Search of the Residence*

■ The majority in this court's prior decision held that Officer McLaughlin's affidavit did not allege sufficient facts to establish probable cause to search the residence. Now, however, this court must determine whether the officers' reliance on the warrant was objectively reasonable. *United States v. Hendricks,* 743 F.2d 653, 654 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) (holding that *Leon* is applicable retroactively in this circuit). *See also United States v. Sager,* 743 F.2d 1261, 1265 (8th Cir.1984), *cert. denied sub. nom. Harmon v. United States,* — U.S. —, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985) (approving retroactivity in the Eighth Circuit). There are no facts suggesting that Officer McLaughlin misled the magistrate, or that the magistrate wholly abandoned his judicial function, or that the warrant was facially deficient in its particularity. Consequently, objectively reasonable reliance turns on whether the affidavit was exceptionally lacking in indicia of probable cause.

In *Leon,* the Court concluded:

> The affidavit ..., as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.

> the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith.

*Leon,* 104 S.Ct. 3422–23.

104 S.Ct. at 3423. Similarly, in this case the evidence in the affidavit was sufficient to create disagreement among the judges.[5] Under such circumstances, the Supreme Court has clearly stated that exclusion of the evidence is not generally justified.

In addition, the companion case to *Leon* cautioned that "we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 3429, 82 L.Ed.2d 737 (1984). Instead, courts must determine if "no reasonably well-trained officer could have believed that there existed probable cause to search" the residence. *Leon,* 104 S.Ct. at 3423. In this case, a reasonably well-trained police officer could, in good faith, conclude that there was probable cause to search the residence.[6] Accordingly, although the search warrant was arguably invalid, the district court properly admitted the evidence seized from the residence against the defendants.

### B. *The Automobile Stop*

*Leon* expressly limited the good faith exception to the fourth amendment exclusionary rule to searches authorized by a warrant issued by a neutral and detached magistrate. 104 S.Ct. at 3409. In this case, Agent Miller did not stop the station wagon pursuant to a warrant. Thus, *Leon* is not directly applicable.

An investigative stop of an automobile may be based on less than probable cause; a "particularized and objective basis for suspecting the particular person stopped of criminal activity" is sufficient. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979): *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979).

■ Agent Miller was conducting a surveillance of the residence prior to the automobile stop and he was familiar with the information that had been presented to the magistrate in support of the search warrant. In addition, Agent Miller had personally detected an odor of cyclohexanone at the residence preceding the defendants' late night activity around the shed. Finally, Agent Miller was aware that the magistrate had issued a search warrant for the residence based on the information provided in the affidavit. These facts, taken together, are sufficient to form a particular-

---

5. In this court's prior decision, the majority of the panel held that the smell of ether, "without more," is insufficient to establish probable cause. The dissent, however, analyzed the totality of the circumstances presented in the warrant and concluded that the smell of ether along with the other relevant factors sufficed to establish probable cause.

Two more recent decisions in this circuit further suggest that there is some disagreement among thoughtful and competent judges in determining what factors support a finding of probable cause in methamphetamine cases. In *United States v. Landis,* 726 F.2d 540, 542–43 (9th Cir.) *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984), an affidavit was sufficient to establish probable cause because the informant believed methamphetamine was being manufactured at the Landis residence and she had seen "glassware which [she] knows is used for the manufacture of methamphetamine." In *United States v. Stanert,* 762 F.2d 775, 779 (9th Cir.) *modified,* 769 F.2d 1410 (1985), probable cause for a search warrant was established by the affiant's statement that he smelled ether and knew that a methamphetamine lab had exploded on the premises one year earlier. Thus, it would appear that the sufficiency of the probable cause determination in methamphetamine cases requires careful examination of the facts and the totality of the circumstances in each case. And, it would appear that the judges reviewing these determinations frequently reach differing conclusions.

6. The totality of the circumstances known to the officer preparing the affidavit demonstrated that (1) an anonymous informant described several persons, suspicious activity, the location of the residence and the strong smell of ether, (2) the location of the premises and the strong smell of ether were corroborated by the police officers, (3) the smell of ether and the manufacture of PCP are frequently associated in the professional experience of trained police officers, and (4) that the activity was taking place late at night and in a remote area where the smell of ether would be unusual. These facts are not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Leon,* 104 S.Ct. at 3422.

ized and objective basis for suspecting that the defendants were engaged in criminal activity.

■ After stopping the station wagon, it was proper for Agent Miller to request the defendants to get out. *Pennsylvania v. Mimms*, 434 U.S. 106, 109–110, 98 S.Ct. 330, 332–33, 54 L.Ed.2d 331 (1977). Then, the detectable odor of ether, the appearance of white powder on the defendants and the presence of weapons visible in the station wagon established probable cause for Agent Miller to arrest the defendants.[7] The items seized during Agent Miller's search incident to the arrest of the defendants directed the investigators to the white van that was parked at the Holiday Inn.

### C. *The Search of the Van*

■ The final issue in this case concerns the admissibility of the evidence seized from the white van parked at the Holiday Inn. This evidence is admissible. It was seized pursuant to a warrant. Probable cause for the warrant to issue was established by evidence seized in the preceding searches of the residence and the search incident to the defendants' arrest.

This court's prior decision held that the evidence seized from the van was inadmissible because it was "tainted" by the invalid residence search and automobile stop. However, in light of this court's reconsideration, and our current holding that neither preceding search was invalid, there is no taint. Accordingly, there was a sufficient basis for issuing the warrant to search the van, and the evidence is admissible against the defendants.

### CONCLUSION

*Leon* recognized a good faith exception to the exclusionary rule. Evidence seized under an invalid warrant may be admissible if the police officer acted in objectively reasonable reliance on the warrant. The exception does not, however, apply if the warrant was so lacking in indicia of probable cause that no reasonably well-trained officer could believe that there was probable cause. The warrant authorizing the search of the residence was not so lacking in indicia of probable cause. The officers executing the warrant acted in objectively reasonable reliance on it. In addition, based on the totality of the circumstances, the subsequent automobile stop, and the warrantless arrest and search of the defendants, were reasonable. The warrant issued to search the white van was based on admissible evidence from the preceding searches, which supported a finding of probable cause. Thus, all of the evidence seized was admissible against the defendants, the district court properly denied the defendants' motions to suppress, and their convictions are hereby

AFFIRMED.

POOLE, Circuit Judge, dissenting:

I believe that, despite the wisdom claimed to have come from the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), this is still a case in which the evidence was obtained in violation of the Fourth Amendment. Therefore, I dissent.

Two search warrants were issued, the first without probable cause, the second clearly the fruit of a warrantless automobile stop based neither on probable cause nor on any untoward activity of the occupants. The opinion glosses lightly over long-established principles designed to impose reasonable restraints upon the police. There is virtually no limit to the reach of police authority if judges forget the lesson of the past in their haste to support a new conceit of "law and order."

I do not believe that the facts in *Leon* are anywhere close to those of this case, and there simply lies no justification for

---

**7.** In *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir.1984), this court stated:

There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime.

discarding the decision which the former majority issued in *United States v. Tate*, 694 F.2d 1217 (1982), where we held (Enright, D.J., author of today's opinion, dissenting) that the self-same warrants were without probable cause, that the vehicle stop and subsequent warrantless arrests and searches violated the Fourth Amendment. I shall not restate the facts upon which our former opinion was based; they are set forth in that decision and are not now challenged.

There are three principal aspects of the underlying facts which belie the applicability of "good faith," which strip the automobile stop and search of any claim to legitimacy, and which taint the issuance of the second warrant and consequent search of the white Ford van as the unwholesome fruit of a poisonous growth. They are, in summary:

### (1) *The First Search Warrant*

An anonymous informant called the Tulare County Sheriff's Office and reported smelling ether at the house in question. He said he was familiar with ether based on his use of that substance for starting engines. The informant did not suggest the conclusion that P.C.P. was being manufactured; but he reported, as a suspicious circumstance, the presence of three or four black males "at the residence" and who were "utilizing" a white Dodge van. No white Dodge vehicle ever turned up. Two Sheriff's deputies went out to the premises where they too smelled ether. They did not see any persons or any activity in or about the premises, nor any vehicle. The affidavit for search warrant stated that P.C.P. manufacture "emits a strong odor of ether." The above is all that the magistrate had before him. At the trial, a state narcotic agent said that at about 3:30 a.m. he smelled another chemical at the premises, a precursor for P.C.P. (but that information was not before the magistrate).

### (2) *The Surveillance of the House, the Stop of the Station Wagon, and the Arrest of the Appellants*

While the state narcotic agent was still in the vicinity of the house, and at about 5:00 a.m., a station wagon arrived with three to five black males. From a distance he observed them moving around in the vicinity of a shed. They carried some packages and objects; some of them wore gloves (the surveillance was too far away for detailed perception). After a short time, they closed and locked the shed door and drove away. The agent followed in his vehicle. Over his radio, he learned that a search warrant had been signed. The agent continued following the station wagon for about five miles. He did not observe any traffic violation or suspicious conduct. He stopped the vehicle and ordered the passengers out. He then smelled the odor of ether about their clothing, saw a whitish powder, searched them and found two keys to the Holiday Inn at Visalia. The men were taken into custody.

### (3) *The Finding and Search of a White Ford Van*

Officers went to the Holiday Inn and searched the grounds for the missing white Dodge van. They did find a white Ford van. Through the windows they saw a scale, containers similar to containers found at the residence, and a package containing rubber gloves. They then secured a second search warrant based on the stop, the arrest and the items seen at the Holiday Inn. Upon search of the Ford van, they seized incriminating evidence.

These are the salient facts of this case. They have not changed since our first decision; but the composition of the majority has indeed shifted. The new majority's new reasoning finds each warrant to have been based on probable cause—not merely that the police were not to be faulted for mistakenly believing that the magistrate knew and followed the law. The majority ignores the fact that the same police who applied for the warrant knew all the facts that were in existence, not, as in *Leon*, where there was a totality of circumstances sufficient to constitute probable cause. Here, in whatever "totality" imaginable,

the facts simply do not meet constitutional muster. Therefore, the majority is now forced to create probable cause out of some gossamer weave.

The majority claims that the stop of the station wagon, five miles away, provoked by no suspicion-engendering event, but based solely on the intelligence that a warrant had been signed, was nonetheless valid because the agent was an "experienced" agent and out of that experience could build a case for arrest. The warrant was not for the arrest of any person; nothing incriminating had yet been found. The analogy to *Leon* is simply misplaced.

In my judgment the majority has exceeded the scope of the remand order. It was not intended to give a former dissenter an opportunity for binding creative writing. It represents an effort to encrust this circuit's case law with a carte blanche license to invade constitutional protections. I regret that memory is so short.

Law enforcement is an important governmental endeavor. Citizens need its protection; but society also needs order and laws for those who enforce both. Mature and sophisticated understanding of the role of the police in our midst is not enhanced by throwing open the gates so that unconstitutionally intrusive conduct is sanctioned by the device of incantations and word slogans. It is still true that history shows that the police must act, but they may not be allowed to act merely on their own.

I would still order suppression in this case. Out-voted, I dissent.